FRIEDMAN, APPELLEE, *v.* CITY OF CINCINNATI, APPELLANT.

(No. 7544—Decided April 14, 1952.)

*Mr. James G. Headley* and *Mr. Robert E. Bernens,* for appellee.

*Mr. Henry M. Bruestle,* city solicitor, *Mr. J. B. Grause, Jr.,* and *Mr. Maurice W. Jacobs,* for appellant.

MATTHEWS, J. This is an appeal from a judgment rendered on a verdict for the plaintiff for damages on account of personal injuries received in a fall upon the sidewalk in front of 1019 West Liberty street in the city of Cincinnati. The plaintiff's contention was and is that the sidewalk was in a defective condition, caused by the failure of the defendant to use reasonable care to maintain it in a reasonably safe condition for travel in the ordinary manner, or, in other words, by its failure to keep the sidewalk in repair and free from nuisance, as it was required to do by Section 3714, General Code. While the defendant's answer

placed in issue the plaintiff's allegations that it had failed in its duty to keep this sidewalk in repair and free from nuisance, the record contains sufficient evidence to carry that issue to the jury, and this court would not be justified in disturbing its finding thereon. The real defense, and the one earnestly urged upon our consideration, was and is that the plaintiff failed to exercise due care for his own safety.

At the time of this accident, the plaintiff was on his way from his home in the city of St. Bernard to his place of employment at the post office annex at Liberty and Dalton streets, in the city of Cincinnati. He went by public conveyance from his home and usually alighted at Western avenue, at the ball park, but, on this occasion, he missed that stop and proceeded on the bus to the next stop, which was at Liberty street and Freeman avenue. It does not appear in the record where the post office annex is in relation to these points, but, presumably, Liberty street and Freeman avenue is one square farther from the annex than Freeman avenue at the ball park. The plaintiff usually reported for duty at 11 o'clock in the morning and it was about that time when he arrived on the sidewalk in front of 1019 West Liberty street, proceeding westwardly.

The only evidence as to what happened at the time and place of the accident is contained in the plaintiff's own testimony. He testified as follows:

"Q. Then where did you go? A. I proceeded west on Liberty street.

"Q. You had an accident on that date? A. I did.

"Q. Where did that happen? A. At 1019 West Liberty.

"Q. What time of day was it? A. Approximately 11 then.

"Q. What kind of day was it? A. Mucky day.

"Q. From the point where you got off the bus at the

southwest corner of Liberty and Freeman what route did you follow? A. I went down Liberty street.

"Q. On which side of the street? A. On the south side.

"Q. Were you familiar with the neighborhood? A. No, I was not.

"Q. Had you ever walked over Liberty street before? A. No, I had not.

"Q. When you arrived at 1019 Liberty street, tell the jury in your own words just what happened and how it happened? A. I was walking along the sidewalk proceeding to the annex, and I saw this sidewalk there and it was broken and I used due caution * * *

"Mr. Grause: I object and ask that portion go out.

"The court: That part of the answer may be stricken and the jury is instructed to disregard it.

"Q. Tell us what you did? A. My feet slipped from under me and I went down.

"Q. Describe the condition of the sidewalk. A. The sidewalk was broken, a portion of it was slanted."

There were steps leading up to the adjoining building and these steps extended out into the sidewalk space. He testified that his left leg "was closest to the steps" and that his foot went out from him in that location. He also testified that traffic was very heavy on West Liberty street at that time.

On cross-examination, he testified:

"Q. In other words, you were traveling alone at the time and there was nobody around at the time you fell. A. Not to my knowledge.

"Q. As to the 17th, for twenty-four hours, and as to the 18th, up to the time of your accident, it was absolutely dry and there was no precipitation of rainfall or snowfall, or anything like that? A. The 17th I said I didn't know; that 18th there was water there on the sidewalk."

On redirect examination, he testified:

"Q. And at what rate were you walking at the time you were hurt? A. Normal."

On recross-examination, he said he approached the place where he was hurt at a normal rate of speed.

There is no evidence that plaintiff's fall was caused by any movement of any portion of the sidewalk, or that he stumbled on any uneven surface, or that his foot caught upon any obstruction or depression. As stated by plaintiff's counsel in their brief: "Plaintiff elected to pass over the solid slanted portion of the sidewalk, and in doing so his left foot slipped out from under him, causing him to fall and sustain the injuries complained of." The record does not disclose the cause of his slipping, unless we are justified in drawing an inference from the fact that it took place upon a sloping surface.

It is thus seen that there is no claim that the plaintiff's injuries were caused by any hidden defect. If any unusual or abnormal condition of the sidewalk had anything to do with his fall, it was the slanting of the concrete block upon which he stepped, of which he was fully aware before and at the time he stepped upon it. Notwithstanding this knowledge, the plaintiff asserts that the circumstances presented an issue of fact as to whether he exercised due care in electing to step on the slanting concrete slab. He claims that he had no alternative course that did not present equal or greater hazards or was not unreasonably circuitous. The only evidence as to the hazards of an alternative course is his testimony that the traffic on West Liberty street was very heavy at that time. We find no evidence in the record as to the existence of other routes by which he could have reached his destination, other than his statement that he would have been required to retrace his course 300 feet to the bus stop, then go one square to Sherman, and down Sherman to the annex. How far that would be is not stated. How-

ever, let us examine this doctrine of alternate routes as applied to injuries received from conditions of which the injured person had full knowledge at and before the receipt of his injuries. Does the doctrine apply to a case where no hidden defect existed? Does it authorize a recovery notwithstanding the general rule that where a person proceeds with full knowledge and awareness of all the facts and is injured without any other intervening cause, he is the author of his own injury?

The plaintiff relies on several Ohio cases. We shall examine them.

The facts in *City of Toledo* v. *Fuller,* 7 C. C. (N. S.), 598, 17 C. D., 729, do not present a case of an injury resulting from a condition of which the plaintiff knew and deliberately chose to expose himself. The plaintiff was injured while walking on a board sidewalk, accompanied by another pedestrian. Her companion stepped upon a loose board "which flew up and tripped her down." The plaintiff testified that she "did not know that these boards were loose at this particular point." Manifestly that does not show an injury resulting from a static condition of which the plaintiff was fully aware.

The facts in *City of Cincinnati* v. *Guth,* 11 C. C. (N. S.), 382, 20 C. D., 834, are almost identical with those in *City of Toledo* v. *Fuller, supra,* and need no further comment.

*Smith* v. *City of Toledo,* 11 C. C. (N. S.), 167, 20 C. D., 454, affirmed, *City of Toledo* v. *Smith,* 79 Ohio St., 459, 87 N. E., 1133, was another case of an injury while using a board sidewalk. The plaintiff was injured by stepping upon a decayed plank, which broke. "At the particular point where the injury was received, the sidewalk, according to the testimony of the plaintiff, appeared to be in fair condition." It was a case of a

concealed or hidden defect causing an injury. It was not a case of injury resulting from a known, obvious, static condition.

In *City of Cincinnati* v. *Green,* 9 Ohio Law Abs., 213, the accident occurred at night. While the plaintiff knew of the defective condition, she did not knowingly subject herself to the hazard while it was in full view.

It seems to us that the Supreme Court stated the correct rule in the syllabus to *Village of Conneaut* v. *Naef,* 54 Ohio St., 529, 44 N. E., 236, and that the rule thus stated has never been departed from or modified by the Supreme Court, although some attempts have been made by trial and intermediate courts. It is: ''One who goes voluntarily upon an accumulation of ice on a walk of a village cannot maintain an action against such village for a personal injury resulting to him, if the source of danger is plainly visible.''

Coming now to the more recent decisions of the Supreme Court, the first one that has been discussed at the bar is *Highway Construction Co.* v. *Sorna,* 122 Ohio St., 258, 171 N. E., 312. In that case the defendant, under a contract with the village of Maple Heights, was engaged in a street improvement, in the course of which it had made a cut which left an abrupt or perpendicular offset or bank of dirt 12 to 18 inches in height at a street crossing, so that a person desiring to cross was obliged to step down to the new level, cross the street and then step up a similar distance on the other side. No boards or other means of retaining the dirt was provided. No other means of crossing existed at that point, and no other means of getting across except by wading through mud and water, through dense traffic, over a circuitous route of many blocks existed. The plaintiff attempted to cross at the regular crossing where the excavation had been made, stepped on the edge of the embankment, which crum-

bled under her weight, and caused her to fall, by reason of which she was injured. She sued the contractor. The case was submitted to the jury which returned a verdict for the plaintiff and answered this interrogatory: "Did the plaintiff see and know the nature and character of the excavation on Anthony street before and at the time of passing over it? A. Yes." It was claimed that this answer required a judgment for the defendant, notwithstanding the general verdict. The Supreme Court held otherwise. The defendant relied upon *City of Norwalk* v. *Tuttle,* 73 Ohio St., 242, 76 N. E., 617, and particularly the second paragraph of the syllabus, providing:

"One who voluntarily goes upon a sidewalk of a city which is obviously, and by him known to be, in a dangerous condition, cannot recover on account of injuries which he may thereby sustain, even if the negligence of the city is admitted or shown. (*Schaefler* v. *The City of Sandusky,* 33 Ohio St., 246, and *The Village of Conneaut* v. *Naef,* 54 Ohio St., 529, approved and followed.)"

The Supreme Court in *Highway Construction Co.* v. *Sorna, supra,* at page 265 said:

"This principle of law is well settled in Ohio, and this court so recognizes. However, we do not regard the same as applicable to this case, for the reason that Mrs. Sorna's injury was not caused by the open and apparent defects of which she had knowledge, to wit, the excavated street, but by another latent, hidden defect in such street or crossing, of which she had no knowledge, to wit, the condition of the bank and its liability to crumble, although she had passed in safety over the same route on previous occasions, using the crossing in about the same way she did at the time of the injury, which bank the defendant negligently failed to properly protect and safeguard."

It can be readily seen that the facts of the case at bar called for the application of the principle propounded in *City of Norwalk* v. *Tuttle, supra*, rather than that propounded in *Highway Construction Co.* v. *Sorna, supra*. There was no hidden or concealed defect proven in the case at bar.

A more recent pronouncement of the Supreme Court on this subject is found in *Winkler* v. *City of Columbus*, 149 Ohio St., 39, 77 N. E. (2d), 461. The facts are so nearly identical that the decision is dispositive of this case. The court construed the testimony of the plaintiff and found that it contained an admission that she knew of the defective sidewalk before and at the time she ventured upon it and that precluded a recovery by her. At page 43, the court said:

"Where one steps on an apparently good sidewalk but owing to some hidden defect an injury occurs, a plaintiff may be justified in claiming a 'latent defect,' but where the step is taken on an obviously defective walk we see no justification for attempting to distinguish between apparent and latent defects of such walk. In this case plaintiff deliberately stepped upon a walk which she saw and realized was a defective walk. Certainly the tilting of a piece of concrete in a defective walk is not an unusual concomitant of a defective walk. When plaintiff stepped upon such piece of concrete in a defective walk she took the risk."

It will be observed that the court mentioned the tilting of a piece of concrete and still held that the plaintiff, having used an obviously defective sidewalk, was precluded from recovering by her own conduct.

While *Johnson* v. *Citizens National Bank of Norwalk*, 152 Ohio St., 477, 90 N. E. (2d), 145, falls into a different factual category, it is enlightening for its

discussion of the various "step in the dark" cases in which the factual differences are pointed out. The court approved the dissenting opinion of the Court of Appeals, in which the distinction was made between the cases in which the plaintiff had opened a door and voluntarily *stepped* in the dark, and cases in which the plaintiff had opened a door and been drawn by the door or otherwise involuntarily into the dark and been injured. Voluntarily stepping into a dark place raises an inference of negligence which, unless refuted, requires a judgment for the defendant.

Recovery is denied in both categories for the same fundamental reason, and that is expressed by the maxim, *volenti non fit injuria*, although frequently expressed in terms of contributory negligence.

We are of the opinion that the trial court should have sustained the defendant's motions for an instructed verdict and for judgment.

For these reasons, the judgment is reversed and final judgment entered for the defendant.

*Judgment reversed.*

HILDEBRANT, P. J., MATTHEWS and Ross, JJ., concur in the syllabus, opinion and judgment.